UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MORE ROOFING, INC.,                                             Case No.: 2:19-cv-04925
                                                                (NGG)(SMG)
                                    Plaintiff,

                    -against-

WILLIAM SCRIVENS, JOHN BREGMAN,
FRANK CYRWUS, INC. and FRANK
CYRWUS,

                                    Defendants.
-----------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, FRANK CYRWUS, INC.'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE, TO COMPEL ARBITRATION PURSUANT TO 9 U.S.C.A § 4

### LAW OFFICE OF STEPHEN BIALKOWSKI, LLC
### 275 NORTH FRANKLIN TPKE.
### SUITE 210
### RAMSEY, NEW JERSEY 07446
### (201)962-9200

### ATTORNEYS FOR DEFENDANT, FRANK CYRWUS, INC.

### SERVED ON COUNSEL FOR MORE ROOFING, INC. VIA FEDERAL EXPRESS OVERNIGHT DELIVERY AND BY EMAIL ON JANUARY 30, 2020

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................1

FACTUAL BACKGROUND ...................................................................................2

ARGUMENT ..........................................................................................................7

     I.      Plaintiff's Amended Complaint Must Be Dismissed as to FCI Pursuant
             to Rule 12(b)(6) Because the Agreements upon which the Amended
             Complaint is Based Include Mandatory and Broad Arbitration Clauses .................7

          A.      STANDARD OF REVIEW.........................................................................7

          B.      THE A401 SUBCONTRACT AND MORE SUBCONTRACT
                  REQUIRE THE PARTIES HEREIN TO ARBITRATE
                  THEIR DISPUTES...................................................................................11

     II.     More Roofing, Inc. Must be Compelled to Arbitrate its Disputes with
             Frank Cyrwus, Inc. Because the Subcontracts Executed by these Parties
             Contain Mandatory Arbitration Clauses that are Governed by the Federal
             Arbitration Act .......................................................................................13

CONCLUSION ...................................................................................................16

## **TABLE OF AUTHORITIES**

**Case Law:**                                                                                   **Page(s)**

Baez v. JetBlue Airways, 745 F. Supp. 2d 214, 220 (E.D.N.Y. 2010) .......................................7, 10

Batalla Vidal v. Nielsen, 291 F. Supp. 3d 260, 268 (E.D.N.Y. 2018) ...............................................7

Denney v. BDO Seidman, L.L.P., 412 F.3d 58, 67 (2d Cir. 2005)............................................12, 15

DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).......................................8, 10

Hines v. Overstock.com, Inc., 668 F. Supp. 2d 362, 366 (E.D.N.Y. 2009), *aff'd*,
380 F. App'x 22 (2d Cir. 2010)...............................................................................................11

Mazza Consulting Grp., Inc. v. Canam Steel Corp., No. 08-CV-38 (NGG),
2008 WL 1809313, at *1 (E.D.N.Y. Apr. 21, 2008)............................................................7, 8

Mumin v. Uber Techs., Inc., 239 F. Supp. 3d 507, 521 (E.D.N.Y. 2017) ..............................11, 14

Resorb Networks, Inc. v. YouNow.com, 51 Misc. 3d 975, 980,
30 N.Y.S.3d 506, 510 (N.Y. Sup. Ct. 2016) ...........................................................................11

Sazerac Co. v. Falk, 861 F. Supp. 253, 257 (S.D.N.Y.) .........................................................7, 8, 10

Schnabel v. Trilegiant Corp., 697 F.3d 110, 119 (2d Cir. 2012) .....................................................11

Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co., 263 F.3d 26, 31 (2d Cir. 2001)...............12, 13

Starke v. Squaretrade, Inc., No. 16-CV-7036 (NGG), 2017 WL 3328236,
at *4 (E.D.N.Y. Aug. 3, 2017), *aff'd*, 913 F.3d 279 (2d Cir. 2019)...................................11

Torres v. Major Auto. Grp., No. 13-CV-0687 NGG CLP, 2014 WL 4802985,
at *3 (E.D.N.Y. Sept. 25, 2014).............................................................................................14

**Statutes:**                                                                                   **Page(s)**

Fed. R. Civ. P. 12(b)(6).............................................................................................................1, 8

9 U.S.C.A. § 4.........................................................................................................................1, 14

## PRELIMINARY STATEMENT

Defendant, Frank Cyrwus, Inc. ("FCI"), respectfully submits this Memorandum of Law in support of its motion pursuant to Fed. R. Civ. P. 12 (b)(6) to dismiss the entire Amended Complaint of plaintiff, More Roofing, Inc. ("More"), to the extent that it is applicable to FCI.  In the alternative, FCI seeks to compel arbitration of all claims by More against FCI pursuant to the Federal Arbitration Act 9 U.S.C.A. § 4.

The basis for FCI's motion is that the subcontracts referenced in More's Amended Complaint and upon which More asserts an agreement between More and FCI contain mandatory arbitration clauses.  Moreover, those arbitration clauses specifically state that arbitrations between the parties are governed by the Federal Arbitration Act.  Thus, the mandatory arbitration clauses preclude this court from hearing claims by either More or FCI that relate to the subcontracts.  As a result, because all of More's claims against FCI relate to the subcontracts between them, those claims must be dismissed.  In the alternative, this court must compel More to arbitrate its disputes with FCI.

## **FACTUAL BACKGROUND**

FCI is one of four defendants named in More's Amended Complaint.  See Amended

Complaint attached as Exhibit "A" to the January 30, 2020 Certification of Stephen Bialkowski

at paragraph 2 (hereinafter "Bialkowski ¶ ___").  Of the 15 Claims for Relief alleged by More in

its Amended Compliant, eight relate to FCI.  Bialkowski ¶3.  The eight Claims for Relief against

FCI can be found in the First, Second, Third, Fourth, Fifth, Sixth, Seventh and Eight Claim for

Relief.  Bialkowski ¶4.  These eight Claims for Relief relate to four construction projects (the

"Projects").  Bialkowski ¶5.  The four Projects are:

    a)     Samuel J. Preston Elementary School;
    b)     Great Neck Union Free School District Phipps Administration Building;
    c)     Wappingers Falls Emergency Services Building; and
    d)     Great Neck High School North.

Bialkowski ¶6.

With regard to each of these four Projects, More alleges two separate Claims for Relief against

FCI.  Bialkowski ¶7.  More contends that for each of the four Projects it is entitled to damages

for:

    a)     FCI's ***material breach of the "contract*** by committing fraudulent acts in the
         performance of the contract"[1] as found at ¶203, ¶223, ¶244 and ¶265 of the

---

[1]More places the heading "Fraud in the Inducement" on the First, Third, Fifth and
Seventh Claim for Relief against FCI.  However, the allegations against FCI in each of these
Claims for Relief appear to be for a "material breach" of contract rather than fraud in the
inducement.  Moreover, even if the court were to read the First, Third, Fifth and Seventh Claims
for Relief against FCI as a fraud, it could not be a fraud in the inducement because it is clear
from the language used by More in the Amended Complaint that if FCI committed a fraud, the
fraud was committed during "the performance of the contract" and not before the contract was
entered into by FCI.

Amended Complaint; and

b)   FCI's ***breach of contract*** as found in the Second, Fourth, Sixth and Eighth Claims for Relief of the Amended Complaint. [Emphasis Added].

Bialkowski ¶8.

The four Projects are discussed at length in the Amended Complaint. Bialkowski ¶9. In particular, More specifically notes, regarding each of the four Projects, that More's contracts with FCI were executed by defendant, William Scrivens ("Scrivens"), on More's behalf. Bialkowski ¶10. More, however, fails to attach these contracts to the Amended Complaint or cite to any actual language from them. Bialkowski ¶11. If it did, it would attach or refer to either the AIA A401-1997 Standard form of Agreement Between Contractor and Subcontractor ("A401 Subcontract") or the More Agreement Between Contractor and Subcontract ("More Subcontract") because these were the only agreements used by Scrivens, the alleged signatory of the contracts. Also, the time period of Scrivens' employment with More (i.e., January 1, 2016 to May 7, 2019) coincides with the dates alleged in More's Amended Complaint that More entered into written subcontracts with FCI. Scrivens ¶¶4, 5, 9, 10 & 11; ¶¶42, 43, 55, 56, 68, 69, 81 & 82 of the Amended Complaint, Bialkowski ¶2. Both the 401 Subcontract and More Subcontract include a mandatory arbitration clause at Article 6. Bialkowski ¶12.

## A401 SUBCONTRACT:

The A401 Subcontract is comprised of multiple documents. Bialkowski ¶13. It incorporates by reference the AIA A201 General Conditions of the Contract for Construction, current as of the date of the A401 Subcontract. Bialkowski ¶14. According to the A401

Page 3 of 16

Subcontract:

> Except to the extent of a conflict with a specific term or condition contained in the
> Subcontract Documents, the General Conditions governing this Subcontract shall be the
> edition of AIA Document A201, General Conditions of the Contract of Construction,
> current as of the date of this Agreement.
> Bialkowski ¶15.

Thus, the General Conditions for any A401 Subcontract applicable to this matter would be the 2017 version of the A201 General Conditions because according to More at paragraphs 42 and 43, 55 and 56, 68 and 69, and 81 and 82 of its Amended Complaint, the contracts for the four Projects were all signed in or after 2017. Bialkowski ¶16. Finally, the A401 Subcontract also includes provisions of the Prime Contract which "apply to the Work of FCI." Bialkowski ¶17. Notwithstanding the foregoing, the A401 Subcontract specifically states in Section 2.1 that, "[w]here a provision of such documents [i.e., the A201 General Conditions and the Prime Contract] are inconsistent with a provision of the Agreement [i.e., the A401 Subcontract], this Agreement shall govern. Bialkowski ¶18.

The A401 Subcontract states with regard to disputes that:

**6.2 ARBITRATION**

6.2.1 *Any claim arising out of or related to this Subcontract*, except claims as otherwise provided in Subparagraph 4.1.5[2] and except those waived in this Subcontract, shall be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 6.1. [Emphasis Added].

---

[2]Section 4.1.5 states that "matters relating to aesthetic effect shall be final and binding on the Subcontractor if consistent with the intent expressed in the Prime Contract." Bialkowski ¶20.

Bialkowski ¶19.

Moreover, the A201 General Conditions, which is incorporated by reference into the A401 Subcontract, notes at Section 13.1 "Governing Law," that:

> The Contract shall be governed by the law of the place where the Project is located, excluding that jurisdiction's choice of law rules. ***If the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 15.4.*** [Emphasis Added].
> Bialkowski ¶21.

Section 15.4, as referred to above, is the Arbitration section of the A201 General Conditions. Bialkowski ¶22.


**MORE SUBCONTRACT**:

The More Subcontract was used for the Great Neck High School North Project. January 30, 2020 Affidavit of Frank Cyrwus at ¶3. It closely follows the A401 Subcontract. Bialkowski ¶23. In fact, it actually incorporates the 1997 version of the A401 Subcontract along with the A201 General Conditions that are current as of the date of the A401 Subcontract and the provisions of the Prime Contract which "apply to the Work of FCI." Bialkowski ¶23. As with the A401 Subcontract, discussed above, the More Subcontract specifically states at Section 2.1 that, "[w]here a provision of such documents [i.e., the A201 General Conditions and the Prime Contract] is inconsistent with a provision of the Agreement [i.e., the More Subcontract], this Agreement shall govern. Bialkowski ¶24.

The More Subcontract states with regard to disputes that:

## 6.2 ARBITRATION

6.2.1 *Any claim arising out of or related to this Subcontract*, except claims as otherwise provided in Subparagraph 4.1.5[3] and except those waived in this Subcontract, shall be subject to arbitration.  Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 6.1.  [Emphasis Added]. Bialkowski ¶25.

Moreover, the A201 General Conditions of the Agreement, which are incorporated by reference in the More Subcontract, state at Section 13.1 "Governing Law" that:

The Contract shall be governed by the law of the place where the Project is located, excluding that jurisdiction's choice of law rules.  *If the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 15.4.*  [Emphasis Added].
Bialkowski¶27.

Section 15.4, as referred to above, is the Arbitration section of the A201 General Conditions. Bialkowski ¶28.

---

[3]Section 4.1.5 states that "matters relating to aesthetic effect shall be final and binding on the Subcontractor if consistent with the intent expressed in the Prime Contract."  Bialkowski ¶26.

## ARGUMENT

I.   **Plaintiff's Amended Complaint Must Be Dismissed as to FCI Pursuant to Rule 12(b)(6) Because the Agreements upon which the Amended Complaint is Based Include Mandatory and Broad Arbitration Clauses.**

### A.   STANDARD OF REVIEW

"A Rule 12(b)(6) motion tests the legal adequacy of the plaintiff's complaint." Batalla

Vidal v. Nielsen, 291 F. Supp. 3d 260, 268 (E.D.N.Y. 2018), *motion to certify appeal granted*,

No. 16CV4756NGGJO, 2018 WL 10127043 (E.D.N.Y. Apr. 30, 2018).  In a Rule 12(b)(6)

motion, the court must "accept as true all factual statements alleged in the complaint and draw all

reasonable inferences in favor of the non-moving party." Baez v. JetBlue Airways, 745 F. Supp.

2d 214, 220 (E.D.N.Y. 2010).  The court, "need not to credit '[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements.'" Batalla at 269.  When

reviewing this type of motion, the court "may consider 'any written instrument attached to the

complaint, statements or *documents incorporated into the complaint by reference* . . . **and**

*documents possessed by or known to the plaintiff and upon which it relied in bringing the*

*suit.* '" Baez at 221 [Emphasis Added].  "In the event that a plaintiff alleges a claim based on a

written instrument, as is the case here, the court may consider such an instrument in ruling on a

Rule 12(b)(6) motion *even if it was not attached to the complaint and made a part thereof*

under Rule 10(c), Fed.R.Civ.P." [Emphasis Added].  Sazerac Co. v. Falk, 861 F. Supp. 253, 257

(S.D.N.Y. 1994); *see also*, Mazza Consulting Grp., Inc. v. Canam Steel Corp., No. 08-CV-38

(NGG), 2008 WL 1809313, at *1 (E.D.N.Y. Apr. 21, 2008)("Where a plaintiff references written

documents in the Complaint, the court may take the documents into consideration in ruling on a

Rule 12(b)(6) motion *even if they are not attached to the Complaint and made a part thereof*
under Rule 10(c)" [Emphasis Added]). "[I]f the allegations of a complaint are contradicted by
documents made a part thereof, the document controls and the court need not accept as true the
allegations of the complaint." <u>Sazerac</u> at 257; *see also*, <u>Mazza Consulting Grp., Inc</u>. at *1 ("If
the documents referenced in the complaint contradict the facts alleged by the plaintiff, the
documents control and the court need not accept as true the plaintiff's allegations."). Even
"[w]here a document is not incorporated by reference, the court may neverless [sic] consider it
where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document
'integral' to the complaint." <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir.
2010).

In this matter, the salient paragraphs from the Amended Complaint with regard to the
mandatory arbitration clauses in the subcontracts between More and FCI are as follows:

¶41.  Defendant Scrivens ultimately retained Defendant Frank Cyrwus, Inc. for the
following projects located in New York:

a)  Samuel J. Preston Elementary School — Contract Value: $3,000.00;

b)  Great Neck Union Free School District Phipps Administration Building —
Contract Value: $144,000.00;

c)  Wappingers Falls Emergency Services Building — Contract Value:
$30,375.00; and

d)  Great Neck High School North — Contract Value: $325,000.00.

¶42.  In or around 2017, Plaintiff and Defendant Frank Cyrwus, Inc. entered into a

Subcontract for the Samuel J. Preston Elementary School Project.

¶43.   Defendant Scrivens executed the contract [for the Samuel J. Preston Elementary School Project] on Plaintiffs behalf.

¶55.   In or around 2017, Plaintiff and Defendant Frank Cyrwus, Inc. entered into a Subcontract for the Great Neck Union Free School District Phipps Administration Building Project.

¶56.   Defendant Scrivens executed the contract [for the Great Neck Union Free School District Phipps Administration Building Project] on Plaintiffs behalf.

¶68.   In or around 2017, Plaintiff and Defendant Frank Cyrwus, Inc. entered into a Subcontract for the Wappingers Falls Emergency Services Building Project.

¶69.   Defendant Scrivens executed the contract [for the Wappingers Falls Emergency Services Building Project] on Plaintiffs behalf.

¶81.   On or around May 10, 2018, Plaintiff and Defendant Frank Cyrwus, Inc. entered into a Subcontract for the Great Neck High School North project.

¶82.   Defendant Scrivens executed the contract [for the Great Neck High School North project] on Plaintiffs behalf.


The facts alleged in these paragraphs of the Amended Complaint clearly note that FCI entered into four (4) written contracts for four (4) Projects.  More's Claims for Relief are derived from these contracts.  Without these contracts, More would not have a claim against FCI.  However, other than mentioning the contracts, More states nothing about the form or substance of the contracts.  Clearly, as discussed in the Sazerac and Baez cases, these contracts are "documents

incorporated into the [amended] complaint by reference" or "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." Sazerac at 257; Baez at 221. Therefore, this court must consider the A401 Subcontract and More Subcontract submitted by FCI even though neither document was specifically mentioned in or attached to the Amended Complaint. Id. More's heavy reliance on the four contracts for its case against FCI, make them "integral" to More's case. DiFolco at 111. Consequently, it is incumbent upon FCI to bring these contracts to the attention of the court and the court must consider the substance of the subcontracts. Id.

As can be seen from a review of both the Affidavits of Frank Cyrwus and William Scrivens, the subcontract for the Great Neck High School North Project is the More Subcontract. The More Subcontract includes a mandatory arbitration clause in Article 6. This form of subcontract for the Great Neck High School North project cannot be refuted by More. Furthermore, as noted in the Affidavit of William Scrivens, prior to Wednesday, February 21, 2018, the only subcontract form that he signed on behalf of More was the A401 Subcontract. Therefore, the written subcontracts for the Samuel J. Preston Elementary School, Great Neck Union Free School District Phipps Administration Building and Wappingers Falls Emergency Services Building, which according to the Amended Complaint were all signed in 2017, had to be the A401 Subcontract. Neither FCI, nor Scrivens has a copy of the written subcontracts for the Samuel J. Preston Elementary School, Great Neck Union Free School District Phipps Administration Building and Wappingers Falls Emergency Services Building projects, but based on the fact that Mr. Scrivens did not have the More Subcontract form until 2018, these three projects had to use the A401 Subcontract because that is the only other subcontract Scrivens used

Page 10 of 16

while he was employed by More.  Thus, unless More can show otherwise, this court must accept

as true the subcontracts submitted with this Motion both by FCI and on behalf or FCI.

### B.    THE A401 SUBCONTRACT AND MORE SUBCONTRACT BOTH REQUIRE THE PARTIES HEREIN TO ARBITRATE THEIR DISPUTES

It is well known that there is "a 'federal policy favoring arbitration,' requiring federal

courts to 'rigorously enforce agreements to arbitrate.'" Mumin v. Uber Techs., Inc., 239 F. Supp.

3d 507, 521 (E.D.N.Y. 2017).  Moreover, "[q]uestions of arbitrability are generally reserved for

judicial determination, including 'whether the parties are bound by a given arbitration clause,' or

'whether an arbitration clause in a concededly binding contract applies to a particular type of

controversy.'" Id.

"Whether or not the parties have agreed to arbitrate is a question of state contract law."

Schnabel v. Trilegiant Corp., 697 F.3d 110, 119 (2d Cir. 2012); *cited with approval by*, Starke v.

Squaretrade, Inc., No. 16-CV-7036 (NGG), 2017 WL 3328236, at *4 (E.D.N.Y. Aug. 3, 2017),

*aff'd*, 913 F.3d 279 (2d Cir. 2019).  "In deciding a motion to stay or dismiss in favor of

arbitration, a court must begin by answering two questions: '(1) whether the parties agreed to

arbitrate, and if so, (2) whether the scope of that agreement encompasses the asserted claims.'"

Hines v. Overstock.com, Inc., 668 F. Supp. 2d 362, 366 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x 22

(2d Cir. 2010).  "The party seeking arbitration has the burden of establishing an agreement to

arbitrate." Resorb Networks, Inc. v. YouNow.com, 51 Misc. 3d 975, 980, 30 N.Y.S.3d 506, 510

(N.Y. Sup. Ct. 2016).

In the matter before the court it is clear that More and FCI agreed to resolve their disputes

with arbitration.  Each of the four (4) contracts for the four (4) Projects has clauses that unquestionably mandate arbitration.  Moreover, it was More that prepared and offered the contracts to FCI, so it is inconceivable that More would question the arbitration clauses in its own contracts.  Additionally, the claims of More for material breach of the "contract by committing fraudulent acts in the performance of the contract" as found in ¶203, ¶223, ¶244 and ¶265 of the Amended Complaint and for "breach of contract" as found in the Second, Fourth, Sixth and Eighth Claims for Relief both fit within the broad language of the arbitration clauses. In both the A401 Subcontract and the More Subcontract, the arbitration clauses state that they apply to "[a]ny claim arising out of or related to this Subcontract."  Thus, claims based on FCI's "performance of the contract" and "breach of the contract" are within the scope of the agreement to arbitrate.

Even if More's Claim for Relief against FCI is read to include a claim for fraud in the inducement -- an argument that FCI does not accept -- courts have held that "arbitration clauses as a matter of federal law are separable from the contracts in which they are embedded" so that "a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud." Denney v. BDO Seidman, L.L.P., 412 F.3d 58, 67 (2d Cir. 2005), *citing*, Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co., 263 F.3d 26, 31 (2d Cir. 2001). According to the United States Supreme Court, cited with approval by the Sphere Drake court,

> [I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it.  But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally. . . .
> Sphere Drake at 31.

Page 12 of 16

The foregoing concept is known as the "Severability Doctrine." Id. Upon applying the Severability Doctrine to this matter, it is clear that the court must dismiss all Claims for Relief sought by More against FCI in their entirety because More does not allege fraud in the inducement of the mandatory and broad arbitration clauses. Instead, More alleges fraud in the inducement of the contract in which the mandatory and broad arbitration clauses are found.

II. **Plaintiff Must be Compelled to Arbitrate its Disputes with Frank Cyrwus, Inc. Because the Subcontracts it Signed with Plaintiff Contained Arbitration Clauses that are Governed by the Federal Arbitration Act.**

Both the A401 and More Subcontracts between More and FCI include mandatory arbitration clauses that are governed by the Federal Arbitration Act. Despite this fact, More has attempted to bring its claims against FCI in this court. This court is the wrong forum for More's claims against FCI. More was advised of this fact on October 30, 2019 through a letter to its counsel in which it was stated, in part, that "[t]he form subcontracts used by . . . [More] have a mandatory mediation and arbitration provision for dispute resolution. See Article 6 Mediation and Arbitration. Thus, any counts based on the . . . [More] form subcontract must be dismissed and . . . [More] must instead proceed to mediation and then arbitration to resolve those claims." Bialkowski ¶29. In the same letter, More was further advised that if it did not voluntarily withdraw the Claims for Relief in its complaint[4], FCI would proceed to have them withdrawn. Bialkowski ¶30. On the same date the aforementioned letter was sent to More's counsel, FCI served More's counsel with a Request for Mediation with the American Arbitration Association as required by both the A401 and More Subcontracts. Bialkowski ¶31. More, however, refused

---

[4]The correspondence to More's counsel predates its amendment of its complaint.

to appear at the mediation.  Bialkowski ¶32.   As a result, the American Arbitration Association

retained FCI's filing fee and closed its file.  Bialkowski ¶33.

> Under Section 4 of the Federal Arbitration Act,
>
> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.  9 U.S.C.A. § 4 (West).

As was stated above in part I. B. of FCI's Memorandum of Law, the question of arbitrability is

generally a question for the court.  Mumin v. Uber Techs., Inc., 239 F. Supp. 3d 507, 521

(E.D.N.Y. 2017).  The court applies a summary judgment standard to determine whether the

parties agreed to arbitrate their disputes.  Torres v. Major Auto. Grp., No. 13-CV-0687 NGG

CLP, 2014 WL 4802985, at *3 (E.D.N.Y. Sept. 25, 2014).  Thus, "'allegations related to the

question of whether the parties formed a valid arbitration agreement' are evaluated to determine

'whether they raise a genuine issue of material fact that must be resolved by a fact-finder at

trial.'"  Id.  In the matter before the court, More cannot dispute that both the A401 Subcontract

and the More Subcontract were agreements prepared by More.  Similarly, More cannot dispute

that the agreements between More and FCI contain mandatory arbitration clauses.  Instead,

More's position is that because it was fraudulently induced to enter into the agreements, the

arbitration clauses are not enforceable.  Thus, the legal issue that this court must decide is

whether an arbitration clause is enforceable if that clause is in a contract that a party was

fraudulently induced to sign.  This exact question was addressed and answered by the Court of Appeals for the Second Circuit in the case of <u>Denney v. BDO Seidman, L.L.P.</u>, 412 F.3d 58, 67 (2d Cir. 2005).  In the <u>Denny</u> case, the court opined that "'arbitration clauses as a matter of federal law are separable from the contracts in which they are embedded' so that 'a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud.'"  <u>Id</u>.[5]

Thus, even if the subcontracts were induced by fraud -- an allegation that FCI does not accept as true -- as a matter of law the Claims for Relief by More against FCI which fall within the broad and mandatory arbitration clauses of both the A401 and More Subcontracts must be decided by arbitration.  As a result, this court must compel More to arbitrate its claims against FCI under the Federal Arbitration Act.

---

[5]See the extended legal arguments on this issue at pages 12 and 13 of this Memorandum of Law.

## CONCLUSION

For the foregoing reasons this Court should dismiss the action in its entirety as to FCI, or alternatively, compel More to arbitrate its disputes with FCI.

Dated:   Ramsey, New Jersey
         January 30, 2020

LAW OFFICES OF
STEPHEN BIALKOWSKI, LLC


By: Stephen Bialkowski, Esq.
(SWB-4188)
Attorney for Defendants
275 N. Franklin Tpke, Ste. 210
Ramsey, New Jersey 07446
(201)962-9200
Stephen@NY-NJLaw.com