UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MORE ROOFING, INC.,　　　　　　　　　　　Case No.: 2:19-cv-04925
　　　　　　　　　　　　　　　　　　　　　　　(NGG)(SMG)
　　　　　　　　Plaintiff,

　　　-against-

WILLIAM SCRIVENS, JOHN BREGMAN,
FRANK CYRWUS, INC. and FRANK
CYRWUS,

　　　　　　　　Defendants.
------------------------------------------------------------x


MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OPPOSITION AND
IN FURTHER SUPPORT OF DEFENDANT, FRANK CYRWUS, INC.'S
MOTION TO DISMISS PURSUANT TO RULE 12(b)(6), OR IN THE
ALTERNATIVE, TO COMPEL ARBITRATION PURSUANT TO 9 U.S.C.A § 4


LAW OFFICE OF STEPHEN BIALKOWSKI, LLC
275 NORTH FRANKLIN TPKE.
SUITE 210
RAMSEY, NEW JERSEY 07446
(201)962-9200

ATTORNEYS FOR DEFENDANT, FRANK CYRWUS, INC.


SERVED ON COUNSEL FOR MORE ROOFING, INC. VIA FEDERAL EXPRESS
OVERNIGHT DELIVERY AND BY EMAIL ON MARCH 12, 2020

## **TABLE OF CONTENTS**

Preliminary Statement..................................................................................................................1

Argument......................................................................................................................................3

    I.      Plaintiff cannot establish that the contracts between it and Frank Cyrwus, Inc. were permeated by fraud or that the arbitration clause in the contract was insert to accomplish a fraudulent scheme ................................................................................3

          A.     MORE'S STANDARD FORM SUBCONTRACT LANGUAGE REQUIRED THAT DISPUTES BE RESOLVED WITH MEDIATION FIRST AND THEN WITH BINDING ARBITRATION..............................3

          B.     MORE'S ALLEGATIONS IN THE AMENDED COMPLAINT DO NOT RISE TO THE LEVEL OF FRAUD....................4

    II.     The court must grant FCI's second argument in its motion based on the Federal Arbitration Act because plaintiff failed to oppose it..............................8

    III.    Plaintiff's Exhibits attached to its Memorandum of Law must not be considered by the Court ........................................................................................8

Conclusion .................................................................................................................................10

## TABLE OF AUTHORITIES

**Case Law:**                                                                                                   **Pages**

Batalla Vidal v. Nielsen, 291 F. Supp. 3d 260, 268 (E.D.N.Y. 2018)..............................................5

Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 389,
516 N.E.2d 190, 193 (1987)...................................................................................................7

Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011).......................................................................9

Turner v. New York Rosbruch/Harnik, Inc., 84 F. Supp. 3d 161,
167 (E.D.N.Y. 2015)..............................................................................................................8

**Statutes:**                                                                                                   **Pages**

Fed. R. Civ. P. 9(b).........................................................................................................................8

N.Y. Bus. Corp. Law § 1312 (McKinney).....................................................................................5

## **PRELIMINARY STATEMENT**

At this early juncture in this matter, it is difficult to flip the narrative in favor of defendants because their side of the case has yet to be submitted. Plaintiff, More Roofing, Inc. ("More"), on the other hand, has used every appearance and submission to try to portray defendants as unsavory characters who fraudulently deceived More. Recently, in More's opposition to Frank Cyrwus, Inc's ("FCI") motion to dismiss and/or to compel arbitration, More even suggests that the fraud perpetrated on it by defendants "resulted in a windfall for [d]efendants and mounting liability for [p]laintiff."

Defendants can no longer allow these falsehoods to continue and potentially taint a decision of this court. As proof of the fact that More has been less than candid with this court, defendants present documentation provided by More as Exhibit "A". (See Exhibit "A" attached to the March 12, 2020 Certification of Stephen Bialkowski). The first document in Exhibit "A" is labeled, "Payments received from Great Neck Public Schools for Great Neck Miller North High School" (these payments are for a project that is the subject of More's Amended Complaint) and bears a More bate stamp of "More_0001". According to this document, More was paid $3,497,257.02 for its work on the Great Neck project as of February 19, 2019. The next five pages of Exhibit "A" are a Job Cost Report for the Great Neck project. These documents bear More bate stamps "More_0002 to More_0006". The Job Cost Report states that More spent $1,984,766.14 for labor and material for the Great Neck project. Applying simple math to these amounts results in a profit for More in the amount of $1,512,490.88. Expressed as a percentage,

this amount equates to 43.25% profit[1]. Thus, although More claims that defendants received a windfall, More's own documentation clearly shows that based on the defendants' hard work and efforts, it was More that benefitted from a windfall.

---

[1] FCI asks that the court take judicial notice of the fact that 43.25% profit on a public construction project is a substantial amount of money.

2

# ARGUMENT

I. **Plaintiff cannot establish that the contracts between it and Frank Cyrwus, Inc. were permeated by fraud or that the arbitration clause in the contract was insert to accomplish a fraudulent scheme.**

The legal arguments presented by More in its opposition are virtually identical to those relied upon by FCI. First, FCI and More cite to the standard for deciding a Rule 12(b)(6) motion. Second, FCI and More acknowledge that legal conclusions must be supported by factual allegations. Third, FCI and More state that there is a federal policy that favors arbitration. Fourth, FCI and More agree that a broad arbitration clause is separable from the remaining parts of a contract and is valid even if the contract was induced by fraud. More, however, then suggests that (1) if the arbitration clause itself was induced by fraud or (2) if a fraud was part of a "grand scheme that permeated the entire contract", then the arbitration clause is not valid. Notwithstanding the foregoing, More is unable to prove either of these two scenarios exist in this matter.

> A. **MORE'S STANDARD FORM SUBCONTRACT LANGUAGE REQUIRED THAT DISPUTES BE RESOLVED WITH MEDIATION FIRST AND THEN WITH BINDING ARBITRATION**

More cannot get past the fact that the language in its own standard form subcontract requires disputes to be submitted to binding arbitration. Nowhere in the Amended Complaint is it alleged that the foregoing fact is not true. Moreover, nowhere in the Amended Compliant is it alleged that the arbitration clause was inserted into the FCI subcontracts at the insistence of FCI. Rather, it is undisputed that FCI signed More's standard form subcontract agreement and that form subcontract agreement includes an arbitration clause. Thus, if the arbitration clause was

3

inserted to accomplish a fraudulent scheme, as is alleged by More, it would be More that was responsible for the fraudulent scheme because it was More's subcontract and the arbitration clause in More's subcontract was inserted by More before the subcontract was presented to and signed by FCI.

Even assuming, as More suggests, that the subcontracts with FCI were not the product of arm's length negotiations, an assumption that defendants do not accept, there are no facts in the Amended Complaint that remotely address this allegation. As stated above, the terms in the subcontracts with FCI were the standard terms that were apparently used with every subcontractor of More. FCI made no changes to the subcontract terms. Instead, FCI agreed to each and every term set forth in the More standard form subcontract agreement. As a result, More cannot now claim that the arbitration clauses in the subcontracts with FCI are not applicable to disputes between it and FCI.

### B. MORE'S ALLEGATIONS IN THE AMENDED COMPLAINT DO NOT RISE TO THE LEVEL OF FRAUD

Four of More's Claims for Relief (hereinafter "CFR") against FCI are labeled as Fraud in the Inducement. Other than the project name listed in each CFR, the manner in which More presents these claims is nearly identical. Thus, the court only needs to consider one of the four CFRs to determine if the others are acceptable. Based on a review of the "FIRST CLAIM FOR RELIEF", it is apparent that the facts alleged by More cannot support a claim for fraudulent inducement. The substance of the FIRST CLAIM FOR RELIEF is found in paragraphs 197 through 204 of the Amended Complaint.

4

In paragraph 197, More alleges the following, "Plaintiff entered into the Subcontract with Defendant Frank Cyrwus, Inc. because of representations made by Defendant Scrivens." Initially, FCI is not even mentioned in this paragraph. The only allegation made by More is directed at Defendant Scrivens who More claims made "representations." More, however, does not set forth what the representations were or whether they were fraudulent.

Next, in paragraph 198, More alleges that, "[s]pecifically, defendant Scrivens falsely represented to Plaintiff that Defendant Frank Crywus, Inc. was authorized to conduct business in the State of New York." Again, FCI is not mentioned and the relevance of being authorized to conduct business in New York is not explained by More. FCI contends that this requirement is nothing more than a "Red Herring." According to New York Business Corporation Law, "(b) The failure of a foreign corporation to obtain authority to do business in this state shall not impair the validity of any contract ...." N.Y. Bus. Corp. Law § 1312 (McKinney).

In paragraph 199, More alleges, "[d]efendant Scrivens made this false representation as a means by which to induce Plaintiff into retaining the services of a business that he owns, operates, possesses a financial interest, or otherwise manages, Defendant Frank Cyrwus, Inc." The "false representation" in paragraph 199 is not set forth, defined or explained. Therefore, it is unknown what More intended by this statement. Assuming paragraph 199 refers to paragraph 198, which is a Red Herring statement, paragraph 199 cannot support a claim for Fraud in the Inducement. Additionally, More provides no support for its contentions that Scrivens' "owns, operates, possesses a financial interest, or otherwise manages, Defendant Frank Cyrwus, Inc." These are mere conclusory statements that the court does not have to accept. Batalla Vidal v. Nielsen, 291 F. Supp. 3d 260. 269 (E.D.N.Y. 2018), *motion to certify appeal granted*, No.

5

16CV4756NGGJO, 2018 WL 10127043 (E.D.N.Y. Apr. 30, 2018).

More than states in paragraph 200 that, "[d]efendants Frank Cyrwus and John Bregman were complicit in the fraud." This paragraph begs the question, "what fraud?" As in paragraph 199, the alleged fraud is not set forth, defined or explained and is a mere conclusory statement.

Paragraph 201 states, "Furthermore, Defendant Scrivens falsely represented to Plaintiff that Defendant Frank Cyrwus, Inc. had provided proof of the contractually required insurance policies, including, but not limited to, Worker's Compensation insurance." FCI acknowledges that the More standard form subcontract required it to provide certain listed insurance. However, even assuming FCI failed to provide contractually required insurance, this fact does not give rise to a fraud. Rather, it would be a simple breach of contract. Also, contractually required insurance is something that is provided *after* a contract has been entered into by the parties. Thus, the alleged failure to comply with a provision of the More standard form subcontract cannot be used to support an allegation of fraudulent inducement to enter into that subcontract.

The same argument is applicable to paragraph 202 which provides, "[a]dditionally, Defendant Scrivens falsely represented to Plaintiff that Frank Cyrwus, Inc. provided him with Certified Payroll documents proving that it complied with the Subcontract and New York State labor Law." There can be no "Certified Payroll" until work has been performed. Thus, paragraph 202 cannot be used to support the allegation that More was fraudulently induced to enter into the More standard form subcontract.

Paragraph 203 provides, "[p]laintiff, relying on Defendant Scrivens' materially false representations entered into a contract with Defendant Frank Cyrwus, Inc. and made payments under the contract notwithstanding the fact that Defendant Frank Cyrwus, Inc. materially

6

breached the contract by committing fraudulent acts in the performance of the contract." This paragraph is no different than the others. First, there is no explanation of the "materially false representations." Instead, More provides threadbare recitals of the elements of a cause of action that this court must not accept. Id. Second, More contends that FCI was paid by More even though FCI allegedly committed an unexplained fraud that was a breach of contract. This phrase erroneously mixes two separate and distinct forms of recovery under the law (i.e., contract and tort). It is well settled law that "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 389, 516 N.E.2d 190, 193 (1987). In the matter before the court, More's claimed failure by FCI to provide contractually required insurance or certified payroll reports[2], is nothing more than a breach of the More standard form subcontract.

Paragraph 204 states, "[a]s a result of Defendant's fraudulent actions, Defendant Frank Cyrwus, Inc. obtained payment from Plaintiff to which it was not otherwise entitled." Like the above paragraphs, this one also simply uses the word "fraudulent" without any support or explanation. According to this court, when a plaintiff pleads fraud, he, she or it ...

> must satisfy the more stringent pleading requirements of Rule 9(b), which demands that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). "[T]he allegations should 'specify the time, place, speaker, and content of the alleged misrepresentations.' " Protter v. Nathan's Famous Sys., Inc., 904 F.Supp. 101, 106 (E.D.N.Y.1995) (Spatt, J.) (*quoting* DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987)). More

---

[2] FCI will refute this allegation at the arbitration of its claim.

specifically, "this standard imposes an obligation on plaintiff to 'specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.' " Suez Equity Investors, L.P. v. Toronto–Dominion Bank, 250 F.3d 87, 95 (2d Cir.2001) (*quoting* Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir.1989)). Further, the complaint must "explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir.2001) (internal quotations and citation omitted; brackets in original).
Turner v. New York Rosbruch/Harnik, Inc., 84 F. Supp. 3d 161, 167 (E.D.N.Y. 2015).

Consequently, although More may have captioned its CLAIM FOR RELIEF as fraudulent inducement, it's claim truly is no more than a breach of contract. Even if it were a fraud, an allegation that FCI disputes, More did not plead it with particularity as is required by Fed.R.Civ.P. 9(b).

### II. The court must grant FCI's second argument in its motion based on the Federal Arbitration Act because plaintiff failed to oppose it.

Point II of FCI's Memorandum of Law seeks to compel arbitration with More based on the Federal Arbitration Act. More, in its opposition, fails to address this point. As a result of More's waiver, the court must compel More to arbitrate its claims against FCI.

### III. Plaintiff's Exhibits attached to its Memorandum of Law must not be considered by the Court.

"The purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined

8

fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.' The court therefore does not ordinarily look beyond the complaint and attached documents in deciding a motion to dismiss brought under the rule." Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011)(*citations omitted*).  In More's opposition, it attempts to present to the court documents that were neither referred to, nor relied upon by More in the Amended Complaint.  Consequently, the court must exclude these extraneous exhibits and solely look to More's claims in its Amended Complaint.

## CONCLUSION

For the foregoing reasons this Court should dismiss the action in its entirety as to FCI, or alternatively, compel More to arbitrate its disputes with FCI.

Dated: Ramsey, New Jersey
       January 30, 2020

                                      LAW OFFICES OF
                                      STEPHEN BIALKOWSKI, LLC

*/s/ Stephen Bialkowski*

By: Stephen Bialkowski, Esq.
(SWB-4188)
Attorney for Defendants
275 N. Franklin Tpke, Ste. 210
Ramsey, New Jersey 07446
(201)962-9200
Stephen@NY-NJLaw.com

10