UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MORE ROOFING, INC.,

                Plaintiff,

      -against-

WILLIAM SCRIVENS, JOHN BREGMAN,
FRANK CYRWUS, INC., and FRANK CYRWUS,

                Defendants.

**MEMORANDUM & ORDER**
**19-CV-4925 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff More Roofing, Inc. ("MRI") brings this action against its former employees, Defendants William Scrivens and John Bregman, and against a subcontractor, Defendant Frank Cyrwus, Inc. ("FCI"), as well as Individual Defendant Frank Cyrwus.[1] MRI claims that Scrivens and Bregman fraudulently induced the company to enter into contracts with FCI and two other subcontractors in which they had an undisclosed ownership interest. MRI also alleges that FCI participated in the fraudulent inducement, and that FCI breached those contracts. Before the court is FCI's Motion to Compel Arbitration, based on its agreements with MRI. (*See* FCI's Mem. in Sup. of Mot. to Compel Arbitration ("Mem.") (Dkt. 16); Pl.'s Mem. in Opp. ("Opp.") (Dkt.

---

[1] Although Mr. Cyrwus is named as a defendant in his individual capacity, the Amended Complaint (Dkt. 14) does not clearly distinguish between allegations against him and allegations against FCI. Cyrwus is not included in the "Parties" section. (*See* Amend. Compl. ¶¶ 7-20.) MRI has also not stated where Cyrwus is domiciled, which is a potential jurisdictional hurdle because this action is before the court based on diversity of citizenship under 28 U.S.C. § 1332. Given the nature of the instant motion, the court leaves the issue of Mr. Cyrwus to the side.

1

16-6); FCI's Reply ("Reply") (Dkt. 16-18).) For the following reasons, FCI's motion is GRANTED and the claims against it are STAYED pending the completion of arbitration.[2]

## I. BACKGROUND

### A. Facts

In January 2016, MRI, a New York corporation, hired Scrivens to be manager of its New Jersey office. (Amend. Compl. ¶¶ 7, 22-23.) The same month, at Scrivens's behest, MRI hired Bregman to work with him. (*Id.* ¶¶ 30-32.) Scrivens and Bregman worked for MRI until they were terminated in May 2019. (*Id.* ¶¶ 24, 33.) Over the course of his employment, Scrivens executed and managed eight construction subcontracts at issue in the litigation: four contracts between MRI and FCI (the "FCI contracts"), and four contracts between MRI and Emjack Construction Corp. (the "Emjack contracts"). (*Id.* ¶ 41, 116.)

In the FCI contracts, MRI retained FCI for labor on four separate public works projects. (*Id.* ¶ 41.) For each project, FCI was required to maintain certain insurance coverages, including

---

[2] FCI moved to dismiss the claims against it under Fed. R. Civ. Pro. 12(b)(6) based on the relevant arbitration clauses and, in the alternative, to compel arbitration, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. However, where a suit must be referred to arbitration based on the relevant agreements and the FAA, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Id.* § 3. "[C]ourts have the discretion to dismiss—rather than stay—an action when *all* of the issues in it must be arbitrated." *Milgrim v. Backroads, Inc.*, 142 F. Supp. 2d 471, 476 (S.D.N.Y. 2001) (emphasis added). That is not the case here, where Defendants Scrivens, Bregman, and Cyrwus are not parties to the motion and 11 of the 15 claims for relief in the Complaint pertain to parties other than FCI. Accordingly, the court treats the present action as a motion to stay the claims against FCI, pending the resolution of mandatory arbitration. This motion has no effect on the claims asserted against the other defendants.

Workers Compensation Insurance; and, because they were public works projects, to pay prevailing wages pursuant to New York Labor Law § 220. (*Id.* ¶¶ 45, 49, 58, 62, 71, 75, 84, 88.) MRI alleges that in each instance, Scrivens falsely represented to Brian Morrell, MRI's principal, that FCI had obtained proper insurance coverage and that it was in compliance with state labor laws. (*Id.* ¶¶ 196-205; 216-225; 237-246; 258-267.) MRI claims that Scrivens intentionally made those false representations to win business for FCI, a company in which he allegedly had a financial interest, and that Defendants Bregman and Cyrwus were complicit in the fraud. (*Id.*) In addition, MRI alleges that Scrivens drafted and submitted false invoices from FCI, falsified contractual provisions to conceal the fraud, and that Bregman notarized forged signatures for Scrivens. (*Id.* ¶¶ 96-103, 35.)

MRI's claims with regard to the Emjack contracts mirror its claims about the FCI contracts. Emjack Construction Corp. is a joint enterprise of Emjack Construction LLC—of which Scrivens and Bregman are allegedly partners—and EMTO Construction, Inc. (*Id.* ¶¶ 108-110.)[3] The Emjack contracts were for four public works projects. For each, MRI alleges that Scrivens falsely represented that Emjack carried the requisite insurance and paid a prevailing wage, and that Bregman was complicit in the fraud. (*Id.* ¶¶ 117-183.)

In 2018, the New York State Insurance Fund conducted an audit of MRI and its subcontractors, including FCI and Emjack. (*Id.* ¶ 187.) For the year 2017, MRI was assessed $4,218.69 in penalties for work completed by FCI, and $68,105.48 for work completed by Emjack. (*Id.* ¶¶ 190-191.) In May 2019, MRI terminated Scrivens and Bregman and closed its New Jersey office. (*Id.* ¶¶ 103, 33.) Thereafter, MRI claims that it became aware of the

---

[3] Although MRI refers to "Defendant Emjack Construction LLC" in its Complaint, neither Emjack nor EMTO is a party to the proceeding. (Amend. Compl. ¶ 108.)

3

fraudulent activity of the defendants and discovered the allegedly falsified documents. (*Id.* ¶¶ 28, 103.)

MRI initially filed this action in August 2019 and amended its Complaint in December 2019. In total, MRI asserts 15 claims. For each of the four FCI contracts, MRI claims fraud in the inducement against all Defendants, and breach of contract against FCI. (*Id.* ¶¶ 196-278.) For each of the four Emjack contracts, MRI claims fraud in the inducement against Scrivens and Bregman. (*Id.* ¶¶ 279-328.) In addition, MRI claims breaches of the duty of loyalty and the faithful servant doctrine by Scrivens and Bregman. (*Id.* ¶¶ 329-352.) At issue in this motion are the eight claims against FCI, four for fraud in the inducement and four for breach of contract.

### B.  Arbitration Provisions

For a case largely about contracts, the docket here is alarmingly bereft of any, save for one agreement between MRI and FCI for the "Great Neck High School North Project" from May 2018. (*See* Great Neck High School North Contract ("Great Neck North Contract") (Dkt. 16-3) at ECF p. 4.) However, FCI represents that all four of its contracts with MRI were governed by one of two nearly identical arbitration clauses and MRI agrees that those are the relevant contractual provisions. (*See* Mem. at 3; Opp. at 1.) Because the parties stipulate as to the contractual language at issue, the court accepts that FCI has accurately represented those two provisions for the limited purpose of deciding this motion.[4]

---

[4] The court leaves open the question of whether the record as currently constituted is sufficient to decide future motions in this case. MRI argues that the fraud pleaded in the Complaint would render any arbitration clause unenforceable because "the agreements themselves were not made as a result of arms-length negotiations." (Opp. at 5.) Thus, MRI does not dispute anything about the breadth of the arbitration clauses at issue, and on this narrow question, the particulars of the contract are less relevant than the sufficiency of the facts as pleaded to find fraud.

The parties agree that the first relevant arbitration clause is in the "A401 Subcontract" which incorporates by reference the American Institute of Architects' ("AIA") standard Document A201-2017, "General Conditions of the Contract for Construction." (*See id.*; Document A201-2017 (Dkt. 16-2) at ECF p. 61.) Section 6.2.1 of the A401 Subcontract provides, with exceptions not relevant to the present dispute: "Any claim arising out of or related to this Subcontract . . . shall be subject to arbitration." (*See* Certification of Stephen Bialkowski (Dkt. 16-2) ¶ 19.) With respect to the governing law, the AIA standard document provides: "If the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern [the Arbitration]." (*Id.* ¶ 27; Document A201-2017 at ECF p. 92.)

The second relevant arbitration provision is found in the standard MRI subcontractor contract, of which the Great Neck North Contract is an example. (*See* Great Neck North Contract at ECF pp. 12-13.) According to Section 6.2.1 of that contract: "Any claim arising out of or related to this Subcontract . . . shall be subject to arbitration." (*Id.*) The contract also incorporates the AIA standard document—albeit the 1997 version—to apply the FAA as governing law for arbitrations. (*Id.* at ECF p. 5.)

## II.  LEGAL STANDARD

The FAA provides that written agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).[5] "This policy is founded upon a desire to preserve parties' ability

---

[5] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

to agree to arbitrate, rather than litigate, their disputes." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019). Under Section 4 of the FAA, a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may file a motion to compel, which a court must grant "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 354-55 (2011).

A motion to compel arbitration requires the court to address two issues: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011); *see also Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 299 (2010) ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." (emphasis in original)). Unless the parties have "clearly and unmistakably" delegated to an arbitrator the authority to resolve issues of arbitrability, *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002), "the question of whether or not a dispute is arbitrable is one for the court." *Citigroup Global Mkts. Inc. v. Abbar*, 761 F.3d 268, 274 (2d Cir. 2014). Where courts have the authority to make that determination, the federal policy in favor of arbitration "requires that any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration." *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 406 (2d Cir. 2009).

In deciding a motion to compel arbitration, "the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir.

6

2003). As a result, allegations related to arbitrability are evaluated to determine "whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012). In addition, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). The court may consider "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017).

## III. DISCUSSION

The arbitration provisions at issue are broad, as MRI concedes, and the parties do not contest that they would apply, on their face, to MRI's claims against FCI. (*See* Opp. at 1, 5-6.) The question before the court is whether the agreements containing those provisions are enforceable, or whether MRI has adequately shown that its agreements with FCI are "permeated with fraud" and should be disregarded entirely. (*Id.* at 6.)

"[A]rbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded, and . . . where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud." *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 31 (2d Cir. 2001) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967)). The facts of *Sphere Drake* are instructive. There, insurance company Sphere Drake unsuccessfully argued that it was not bound by agreements that its agent, Euro International Underwriting ("Euro"), entered on its behalf, including the arbitration provisions of those agreements. *Sphere Drake*, 263 F.3d at 28. Like MRI, Sphere Drake did not argue that the specific arbitration provisions were the product of fraud. *Id.*

7

at 30. Instead, it maintained that Euro had breached its duty of loyalty and fraudulently induced it into entering the contracts that were at issue, rendering those contracts void. *Id.* The Second Circuit explained that to void an entire contract based on an agent's breach of its duties to its principal (including by fraudulent dealings), the principal must show both the agent's breach *"and [that] the opposing party knows this." Id.* at 32 (emphasis in original). Because Sphere Drake did not present adequate evidence that its counterparty had knowledge of the agent's breach, the court held that the contracts were not void. *Id.* at 33. Accordingly, Sphere Drake needed to present evidence that the arbitration clauses specifically were the product of fraud in order to avoid mandatory arbitration. *Id.* at 33-34.

The facts here are entirely analogous. MRI has made specific allegations of fraud against Scrivens and Bregman, including that they falsified documents and signatures, and engaged in undisclosed self-dealing. (Amend. Compl. ¶¶ 26, 35-36.) However, MRI makes no claims about FCI's knowledge of or involvement in any fraudulent activity. The closest allegation that could be so construed is MRI's assertion that Defendant Frank Cyrwus was "complicit in the fraud," (*id.* ¶ 200), but it offers no evidence of his complicity, nor does it ever clarify the relationship between Cyrwus and FCI, the company that bears his name. To show that its contracts with FCI are void, MRI would need to offer evidence of FCI's knowledge of or involvement in the fraud beyond "merely speculation." *Sphere Drake*, 263 F.3d at 33. Because it has failed to do so, and because it makes no claims about fraud in the inducement of the arbitration clauses specifically, MRI has not met its burden to show that the dispute is unsuitable for arbitration. *See Green Tree Fin. Corp.-Ala.*, 531 U.S. at 91. Accordingly, MRI must direct its claims against FCI to an arbitrator, not the court.

## IV. CONCLUSION

For the foregoing reasons, Defendant FCI's Motion to Compel Arbitration (Dkt. 16) is GRANTED, and the proceedings against FCI are STAYED pending the resolution of arbitration.

SO ORDERED.

Dated:   Brooklyn, New York
         February 5, 2021

                                      /s/ Nicholas G. Garaufis
                                      NICHOLAS G. GARAUFIS
                                      United States District Judge