UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---
MORE ROOFING, INC.,

            Plaintiff,

-against-

WILLIAM SCRIVENS, JOHN BREGMAN,
FRANK CYRWUS, INC., and FRANK CYRWUS,

            Defendants.
---
WILLIAM SCRIVENS and JOHN BREGMAN,

            Third-Party Plaintiffs,

-against-

BRIAN J. MORRELL, TONI JO MORRELL,
EMJACK CONSTRUCTION CORP., EMIL D.
KISZKO, JOHN/JANE DOES 1-20, and ABC
COMPANIES 1-20,

            Third-Party Defendants.
---

**MEMORANDUM & ORDER**
**19-CV-4925 (NGG) (LB)**

**19-CV-4925 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff More Roofing, Inc. ("MRI") brings this action against its former employees, Defendants William Scrivens and John Bregman, and against a subcontractor, Defendant Frank Cyrwus, Inc. ("FCI"), as well as Individual Defendant Frank Cyrwus (collectively, "Defendants"). MRI claims that Scrivens and Bregman fraudulently induced the company to enter into contracts with several construction companies, including FCI, Emjack Construction Corp. ("Emjack"), and EMTO Construction, Inc. ("EMTO"), in which Scrivens and Bregman had undisclosed ownership interests. Defendants Scrivens, Bregman, and Cyrwus answered the Complaint, asserting several counterclaims against MRI and a third-party complaint against Brian J. Morrell, Toni Jo Morrell, Emjack, Emil D. Kiszko (president of Emjack), John/Jane Does

1

1-20, and ABC Companies 1-20, seeking, among other things, indemnification for damages arising out of Emjack's alleged submission of false payroll reports in connection with its work on MRI projects. (Am. Third-Party Compl. (Dkt. 36) at 38-40.) Pending before the court is Emjack and Kiszko's[1] motion for summary judgment and Rule 11 sanctions against Scrivens and Bregman. (Emjack's Mot. for Summ. J. and Rule 11 Sanctions ("Mot.") (Dkt. 83); Emjack's Local Rule 56.1 Statement ("Emjack's 56.1 Statement") (Dkt. 82); Bregman Resp. ("Resp.") (Dkt. 86); Emjack's Reply ("Reply") (Dkt. 87).) For the reasons that follow, Emjack and Kiszko's motion for summary judgment is GRANTED, and their request for Rule 11 sanctions is DENIED.

## I. BACKGROUND

### A. Facts[2]

MRI is New York-based roofing contractor. (Emjack's 56.1 Statement ¶¶ 1, 10.) Brian J. Morrell is MRI's President, and Toni Jo

---

[1] For the sake of simplicity, in the context of the pending motion and the claims asserted against them in the Amended Third-Party Complaint, the court collectively refers to Emjack and Kiszko as "Emjack."

[2] The following facts are drawn from Emjack's Local Rule 56.1 Statement. (*See* Emjack's 56.1 Statement.) Neither Scrivens nor Bregman submitted a Rule 56.1 statement. Additionally, while Bregman submitted a response to Emjack's motion, Scrivens did not.

Unless otherwise noted, the facts are undisputed. However, to the extent an assertion of fact is not supported by admissible evidence, the court will disregard that assertion. *See* E.D.N.Y. Loc. Civ. R. 56.1(d) (eff. July 1, 2024) ("Each statement by the movant or opponent under Rule 56.1(a) and (b), including each statement denying and controverting any statement of material fact, must be followed by citation to evidence that would be admissible."); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]here there are no citations or where the cited materials do not support the factual assertions in the [56.1] Statements, the Court is free to disregard the assertion[s]."), *abrogated on other grounds by Gross v. FBI Fin. Servs., Inc.*, 557 U.S. 167 (2009). This standard applies even though

Morrell is one of MRI's "officer[s]." (*Id.* ¶¶ 6-7.) In January 2016, MRI hired Williams Scrivens as the manager of its New Jersey office and, soon thereafter, it hired John Bregman to work alongside him. (*Id.* ¶¶ 11-12.) Over the course of his employment, Scrivens executed and managed eight construction subcontracts at issue in this litigation: four contracts between MRI and FCI (the "FCI Contracts"), and four contracts between MRI and Emjack (the "Emjack Contracts").[3] (MRI's Am. Compl. (Dkt. 14) ¶¶ 41, 116; Emjack's 56.1 Statement ¶ 14.)

In the Emjack Contracts, MRI retained Emjack[4] for labor on four separate public works projects. (Emjack's 56.1 Statement ¶ 14.) According to MRI, for each project, Emjack was required to (1) maintain certain insurance coverages, including Workers' Compensation Insurance, and (2) pay prevailing wages applicable to public works projects. (*Id.* ¶ 15.) MRI alleges that, in each instance, Scrivens falsely represented to MRI that Emjack had obtained proper insurance coverage and that Emjack was in compliance with state labor laws. (*Id.* ¶ 16.) MRI further alleges that it then submitted the false information provided by Scrivens to the relevant New York State authorities. (*Id.* ¶ 17; MRI's Am. Compl. ¶¶ 117-83.) MRI claims that Scrivens intentionally made

---

Emjack's motion for summary judgment is technically unopposed. *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (explaining that, even on an unopposed motion for summary judgment, the court "must be satisfied that the citation to evidence in the record supports the assertion").

[3] The Emjack Contracts include the Harrison High School Contract, the Suffern Post Office Contract, the Elizabeth M. Baker Elementary School Contract, and the Camp Smith Training Site Contract. (MRI's Am. Compl. ¶¶ 117-83.) In August 2018, EMTO replaced Emjack as the subcontractor on the Camp Smith Training Site Contract. (*Id.* ¶ 168.)

[4] Emjack is a joint enterprise of Emjack Construction, LLC—of which Scrivens and Bregman are allegedly partners—and EMTO. (MRI's Am. Compl. ¶¶ 108-10.)

these false representations to win business for Emjack, a company in which he allegedly had a financial interest, and that Bregman was complicit in the fraud.[5] (MRI's Am. Compl. ¶¶ 108-10, 117-83.)

In 2018, the New York State Insurance Fund (the "NYSIF") conducted an audit of MRI and its subcontractors, including Emjack, for the calendar year 2017. (Emjack's 56.1 Statement ¶ 19.) On August 21, 2018, the NYSIF assessed MRI $68,105.48 in penalties for work completed by Emjack without proper Workers' Compensation Insurance. (*Id.* ¶ 20; NYSIF Audit Notice (Dkt. 84-9).) However, on October 30, 2018, the NYSIF rescinded the Emjack-related penalty. (Emjack's 56.1 Statement ¶¶ 33-34; NYSIF Audit Rescission (Dkt. 84-10).)

In the spring of 2019, MRI terminated Scrivens and Bregman and closed its New Jersey office. (MRI's Am. Compl. ¶¶ 24, 33, 103.) MRI claims that it thereafter became aware of the fraudulent activity of the Defendants and discovered the allegedly falsified documents. (*Id.* ¶¶ 28, 103.)

### B. Procedural History

MRI filed suit against Scrivens, Bregman, FCI, and Cyrwus on August 28, 2019. (MRI's Compl. (Dkt. 1).) MRI filed the operative Amended Complaint on December 11, 2019, alleging 15 causes of action against the same defendants.[6] (*See* MRI's Am. Compl.) For each of the four FCI Contracts, MRI claims fraud in the inducement against all Defendants, and breach of contract

---

[5] MRI's claims with regard to the FCI Contracts mirror its claims as to the Emjack Contracts. *See More Roofing, Inc. v. Scrivens*, No. 19-CV-4925 (NGG) (LB), 2021 WL 413605, at *2 (E.D.N.Y. Feb. 5, 2021).

[6] Although MRI refers to "Defendant Emjack Construction, LLC" in its Amended Complaint, it does not name Emjack or EMTO as Defendants. (MRI's Am. Compl. ¶ 108.)

against FCI. (*Id.* ¶¶ 196-278.) For each of the four Emjack Contracts, MRI claims fraud in the inducement against Scrivens and Bregman. (*Id.* ¶¶ 279-328.) MRI also alleges breaches of the duty of loyalty and violations of the faithful servant doctrine against Scrivens and Bregman. (*Id.* ¶¶ 329-52.)

Defendants Scrivens, Bregman, and Cyrwus answered MRI's Amended Complaint on November 9, 2021, asserting several counterclaims against MRI and a third-party complaint against Brian and Toni Jo Morrell, Emjack, Kiszko, John/Jane Does 1-20, and ABC Companies 1-20. (*See* Third-Party Compl. (Dkt. 23).) Scrivens, Bregman, and Cyrwus filed their amended answers, counterclaims, and third-party complaint on March 4, 2022. (*See* Am. Third-Party Compl.) The Amended Third-Party Complaint alleges a single cause of action by Scrivens and Bregman against Emjack: indemnification for "any liability arising out of the certified payrolls submitted by Emjack."[7] (*Id.* at 40.) Specifically, Scrivens and Bregman allege that Emjack misrepresented the contents and correctness of its weekly certified payroll reports applicable to one or more of the Emjack Contracts. (*Id.* at 38-40) As a result, Scrivens and Bregman seek indemnification for the damages, if any, that may be imposed on them because of Emjack's alleged misrepresentations.[8] (*Id.*)

---

[7] Cyrwus is not included in this indemnification claim. (Am. Third-Party Compl. at 40.)

[8] Scrivens and Bregman seek indemnification only for damages arising out of Emjack's alleged misrepresentations in its *payroll reports*; they do not seek indemnification for the damages that may be imposed on them in connection with the alleged failure of Emjack to maintain Workers' Compensation Insurance. (Am. Third-Party Compl. at 38-40.) In any event, as noted by Emjack, because the NYSIF rescinded the $68,105.48 in penalties assessed against MRI in connection with the Emjack Contracts, there are no outstanding Workers' Compensation Insurance-related damages as to Emjack. (56.1 Statement ¶¶ 33-34; NYSIF Audit Rescission.)

Although Scrivens and Bregman claim indemnification in connection with all four Emjack Contracts, the New York State Department of Labor (the "DOL") issued a notice of withholding only as to one of the Emjack Contracts: the Camp Smith Training Site Project. (Emjack's 56.1 Statement ¶ 27.) Specifically, on August 21, 2019, the DOL issued a Notice of Withholding to MRI in connection with an alleged underpayment of prevailing wages on the part of Emjack at the Camp Smith Training Site Project, in the amount of $22,016.75. (*Id.* ¶ 28; Notice of Withholding (Dkt. 84-8).) Emjack ultimately "settled, compromised[,] and disposed of" the $22,016.75 Notice of Withholding via stipulation with the DOL on March 27, 2024. (Emjack's 56.1 Statement ¶¶ 27-29; DOL Stipulation (Dkt. 84-12).) As of October 2024, there are no outstanding notices of withholding "in connection with an alleged underpayment of wages" related to Emjack. (Emjack's 56.1 Statement ¶ 30.)

On April 3 and 5, 2024, Emjack presented to counsel for Scrivens and Bregman documentary evidence of (1) the recission of the $68,105.48 Workers' Compensation Insurance penalties and (2) Emjack's stipulation with the DOL disposing of the $22,016.75 Notice of Withholding. (*Id.* ¶ 34; April 3, 2024 Email (Dkt. 84-19); April 5, 2024 Email (Dkt. 84-20).) Then, on May 3 and 20, 2024, Emjack presented to counsel for Scrivens and Bregman a proposed stipulation of dismissal of the Amended Third-Party Complaint against Emjack. (Emjack's 56.1 Statement ¶ 35; May 3, 2024 Email (Dkt. 84-27); May 20, 2024 Email (Dkt. 84-29).) Emjack followed up with counsel several times in the early summer of 2024, but the parties ultimately did not enter a stipulation of dismissal. (Emjack's 56.1 Statement ¶ 36.)

Emjack filed the instant motion for summary judgment and Rule 11 sanctions on October 1, 2024. (*See* Mot.) Emjack claims that it is entitled to summary judgment on Scrivens and Bregman's

6

claims for indemnification because there is no outstanding payroll-related liability as to Emjack. (*Id.* at 13-14.) Emjack further asserts that it is entitled to Rule 11 sanctions against Scrivens and Bregman because they (a) asserted a "frivolous" third-party claim against Emjack and (b) "fail[ed] and refus[ed]" to voluntarily dismiss the Amended Third-Party Complaint after being presented with documentary evidence that there were no outstanding DOL Notices of Withholding as to Emjack. (*Id.* at 15.)

Bregman, through counsel, responded to Emjack's motion. (*See* Bregman Resp.) Scrivens did not respond, either through counsel or himself. At the outset of this case, counsel Stephen Bialkowski appeared on behalf of all Defendants, including Scrivens and Bregman. (Bialkowski Notice of Appearance ("NOA") (Dkt. 7).) In September 2023, however, Bialkowski withdrew as counsel for the Defendants due to an apparent conflict of interest which arose after Scrivens "testified [via deposition] in such a way as to create a conflict between himself and the other defendants." (Bialkowski Cert. (Dkt. 58-1) ¶ 2; Text Order Dated 9/20/2023 (granting motion to withdraw).) Paul Greenfield then appeared on behalf of Bregman and FCI, while Gil Santamarina appeared on behalf of Scrivens. (Greenfield NOA (Dkt. 65); Santamarina NOA (Dkt. 70).) Eventually, on July 1, 2024, Scrivens discharged Mr. Santamarina and elected to proceed *pro se*. (Santamarina Discharge (Dkt. 78).) Mr. Greenfield attempted to contact Scrivens on numerous occasions, at first through his attorney and then directly, to inquire about Emjack's invitation to dismiss the Amended Third-Party Complaint. (Resp. ¶¶ 26-32.) Ultimately, at some point in September 2024, Scrivens informed Mr. Greenfield that he intended to default and would not participate in the case. (*Id.* ¶ 32.) Thus, only Bregman, via Mr. Greenfield, responded to Emjack's motion for summary judgment and Rule 11 sanctions.

For his part, Bregman agrees that Emjack is entitled to summary judgment on his indemnification claim. (*Id.* ¶ 3.) However, Bregman opposes Emjack's request for Rule 11 sanctions as unjustified under the circumstances. (*Id.*)

## II. SUMMARY JUDGMENT

### A. Legal Standard

Rule 56(a) provides that a court "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Vt. Teddy Bear*, 373 F.3d at 244 (same). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013).[9] In adjudicating a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. *Vt. Teddy Bear*, 373 F.3d at 244.

If the non-moving party fails to oppose a summary judgment motion, the court may "grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). When faced with an unopposed motion for summary judgment, the court's task "is to determine, on the basis of the unopposed motion and statement of undisputed facts, whether [the movants] have met their burden of demonstrating the absence of any material issue of fact for trial and their entitlement to summary judgment on all claims against them." *Martin v. Bailey*, No. 12-CV-1384 (JAM), 2015 WL 927716, at *3 (D. Conn. Mar. 4, 2015) (citing *Jackson v. Fed. Express*, 766 F.3d 189, 197-98 (2d Cir. 2014)); *see also Vt. Teddy Bear*, 373 F.3d at

---

[9] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

242 ("Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law."). In determining whether the moving party is entitled to summary judgment, the court "may not rely solely on the statement of undisputed facts contained"; rather, it "must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear*, 373 F.3d at 244.

### B. Discussion

The unopposed statement of facts and supporting documentary evidence demonstrate that there is no genuine dispute as to any material fact, and Emjack is entitled to judgment as a matter of law on Scrivens and Bregman's indemnification claim.

As noted above, the Amended Third-Party Complaint alleges a single cause of action against Emjack: indemnification for "any liability arising out of the certified payrolls submitted by Emjack" in connection with the four Emjack Contracts. (Am. Third-Party Compl. at 40.) It is undisputed that the DOL only issued a notice of withholding as to one of the Emjack Contracts: the Camp Smith Training Site Project. (Emjack's 56.1 Statement ¶ 27.) It is further undisputed that Emjack settled the $22,016.75 Camp Smith Notice of Withholding with the DOL in March 2024, as evidenced by the Notice of Withholding and Stipulation submitted by Emjack in connection with the instant motion for summary judgment. (*Id.* ¶¶ 27-29; Notice of Withholding; DOL Stipulation.) According to Emjack's Rule 56.1 Statement and an April 3, 2024 email from Emjack to counsel for Scrivens and Bregman, there are no outstanding DOL Notices of Withholding as to Emjack. (Emjack's 56.1 Statement ¶ 30; April 3, 2024 Email.) Thus, the undisputed factual allegations and documentary evidence demonstrate that there is no outstanding payroll-related

9

liability as to Emjack.[10] Therefore, Emjack is entitled to judgment as a matter of law on Scrivens and Bregman's indemnification claim.

Emjack's unopposed motion for summary judgment is granted.

### III. RULE 11 SANCTIONS

#### A. Legal Standard

Rule 11(b) provides, in pertinent part, that an attorney who presents "a pleading, written motion, or other paper" to the court thereby "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the filing is: (1) not presented for any improper purpose "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) either supported by evidence or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(1)-(3).

The central purpose of Rule 11 "is to deter baseless filings in district court and . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); *Gagasoules v. MBF Leasing LLC*, 286 F.R.D. 205, 211 (E.D.N.Y. 2012) (same). To that end, Rule 11 "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose." *Cooter & Gell*, 496 U.S. at 393.

---

[10] The court also notes that in MRI's motion for partial summary judgment against Scrivens and Bregman, addressed in a separate memorandum and order, MRI acknowledges that there is no outstanding payroll related-liability as to Emjack. (*See* MRI's Mot. for Partial Summ. J. (Dkt. 89-1) at 12.)

If an attorney violates these principles, the court "may" impose "an appropriate sanction," such as "nonmonetary directives," "an order to pay a penalty into court," or "an order directing payment . . . of the [other party's] reasonable attorney's fees and other expenses." Fed. R. Civ. P. 11(c)(1), (4). Importantly, Rule 11 sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *see also Cooter & Gell*, 496 U.S. at 393 (explaining that "any interpretation [of Rule 11] must give effect to the Rule's central goal of deterrence").

"[L]iability for Rule 11 violations requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers." *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009). Still, the Second Circuit has cautioned that Rule 11 sanctions should be "made with restraint," *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999), and, even when an attorney violates Rule 11(b), the decision whether to impose sanctions is a matter for the court's discretion, *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004).

### B. Discussion

Emjack requests that the court impose Rule 11 sanctions against Scrivens and Bregman. (Mot. at 15-17.) Emjack contends that Scrivens and Bregman violated Rule 11(b) when they (a) asserted a "frivolous" third-party claim against Emjack in the first place and (b) "fail[ed] and refus[ed]" to voluntarily dismiss the Amended Third-Party Complaint after being presented with documentary evidence that there were no outstanding DOL Notices of Withholding as to Emjack. (*Id.* at 15.) Emjack claims that the Amended Third-Party Complaint was frivolous from the outset because, while Scrivens and Bregman claimed that Emjack "misrepresented . . . the contents and correctness [of its] Weekly

Certified Payroll Reports," neither Scrivens nor Bregman produced any documentary evidence in discovery demonstrating that they received any payroll reports from Emjack in connection with the four Emjack Contracts. (Reply ¶¶ 8-10.) Additionally, Emjack points out that it informed "counsel for Scrivens and Bregman"[11] of its resolution of the Camp Smith Notice of Withholding as early as April 2024, and that it presented counsel with a proposed stipulation of dismissal of the Amended Third-Party Complaint in May 2024 and on several occasions in the early summer of 2024. (Mot. at 16.) However, despite the fact that there were no outstanding payroll-related liability issues as to Emjack, and therefore no basis for Scrivens and Bregman's indemnification claim, Scrivens and Bregman did not agree to dismiss their claim against Emjack. (*Id.* at 16-17.) Thus, Emjack requests that the court impose sanctions against Scrivens and Bregman[12] "for inexplicably failing and refusing to voluntarily dismiss the[ir] frivolous Third-Party Claim." (*Id.* at 17.)

Counsel for Bregman paints a different picture of events. First, Mr. Greenfield reasons that the fact that Emjack resolved the Camp Smith Notice of Withholding with the DOL demonstrates that there *was* potential liability regarding Emjack at the outset of this litigation. (Resp. ¶¶ 4-5.) Therefore, he asserts that "the Third-Party complaint was entirely appropriate." (*Id.* ¶ 17.) Second, he contends that the failure to withdraw the Amended Third-Party Complaint was justified under the "unique" circumstances. (*Id.* ¶¶ 18-19.) Specifically, Mr. Greenfield points out that he joined this case as counsel for Bregman in October 2023,

---

[11] Emjack refers to opposing counsel as "counsel for Scrivens and Bregman." (*See* Mot. at 15-17.) However, Emjack does not acknowledge the fact that, at the time of its requests to dismiss the Third-Party Complaint, Scrivens and Bregman were represented by their own, separate counsels. (*See* Greenfield NOA; Santamarina NOA.)

[12] It is unclear whether Emjack asks the court to sanction Scrivens and Bregman individually, or their respective counsels, or both.

after original counsel for Scrivens and Bregman withdrew from the case due to an apparent conflict of interest. (*Id.* ¶¶ 22-23.) Around the same time, Mr. Santamarina appeared on behalf of Scrivens. (*Id.* ¶ 24.) Mr. Greenfield states that after counsel for Emjack first mentioned its request for dismissal of the Amended Third-Party Complaint in the spring of 2024, Mr. Greenfield "undertook an investigation into the facts" and "ultimately conclud[ed] that the best course of action would be to withdraw the third-party complaint." (*Id.* ¶¶ 25-27.) Thereafter, Mr. Greenfield "consulted with Mr. Santamarina, who told [Mr. Greenfield] that his client had stopped communicating with him and that he therefore could not consent to withdrawing the third party action." (*Id.* ¶ 28.) Mr. Greenfield advised counsel for Emjack of this development, and they "all agreed that until . . . Scrivens communicated with his lawyer, a withdrawal by [Bregman] alone would be of no use to [Emjack]." (*Id.* ¶ 30.)

At some point, Mr. Greenfield learned that Scrivens had elected to proceed *pro se*; however, Mr. Greenfield could not contact Scrivens despite numerous attempts to do so. (*Id.* ¶ 31.) It was not until late September 2024 that Scrivens informed Mr. Greenfield that he intended to default and would not participate in the case. (*Id.* ¶ 32.) At that point, Mr. Greenfield reached out to counsel for Emjack, who informed him that "it was too late" and that he intended to proceed with the motion for summary judgment. (*Id.* ¶ 33.) This made sense to Mr. Greenfield "because the situation was the same as before; absent consent from Scrivens, the third party complaint would still be in the case." (*Id.*) Thus, because the Amended Third-Party Complaint could not be dismissed without the consent of Scrivens, who could not be reached by his own attorney or by Mr. Greenfield until the middle of motion practice, Bregman argues that the failure to dismiss

13

the Amended Third-Party Complaint is excusable, and Rule 11 sanctions are unwarranted.[13] (*Id.*)

The court concludes that Rule 11 sanctions are unwarranted under the circumstances. First, the court detects no violation of Rule 11(b) by counsel for Scrivens or Bregman or their respective clients. The undisputed facts—that there was an outstanding Notice of Withholding pertaining to an Emjack Contract and that Emjack ultimately resolved that Notice of Withholding with the DOL—demonstrate that there was potential liability on the part of Emjack at the time of the indemnification claim. (Emjack's 56.1 Statement ¶¶ 28-29; Resp. ¶¶ 4-5.) Although the parties agree that Emjack no longer faces any potential payroll-related liability, that was not the case in March 2022 when Scrivens and Bregman filed their Amended Third-Party Complaint. (*See* Am. Third-Party Compl.) As such, the court rejects Emjack's argument that the indemnification claim was frivolous at the outset.

Nor can the court discern a Rule 11(b) violation in the failure to execute a voluntary dismissal. As Mr. Greenfield points out—and Emjack does not dispute—Bregman could not unilaterally agree to a dismissal of the Amended Third-Party Complaint without the consent of Scrivens, who was unreachable until the middle of motion practice. With this context in mind, it is understandable why Mr. Greenfield and Mr. Santamarina declined to execute Emjack's proposed voluntary dismissal, which would have been useless to Emjack without both Bregman *and* Scrivens's consent. Furthermore, while Scrivens may have caused some delay as a result of his unavailability, the court cannot conclude that a delay of approximately five months—from April to September 2024—was so unreasonable as to constitute a violation of Rule 11(b). Thus, the court rejects Emjack's claim that Scrivens and Bregman

---

[13] Emjack does not dispute any of the foregoing factual contentions. (*See generally* Reply ¶¶ 5-18.)

or their counsels violated Rule 11(b) by failing to voluntarily dismiss the Amended Third-Party Complaint. Counsel and their respective clients handled the situation reasonably.

Second, even if counsel or their respective clients violated Rule 11(b) in some respect, the court would decline to impose sanctions. As noted above, Rule 11 sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). The court cannot conclude that sanctions would serve any deterrent effect here. Imposing sanctions against Mr. Santamarina would seemingly encourage attorneys to dismiss actions without their client's consent. It is even less clear what purpose sanctions against Mr. Greenfield or his client would serve. And in the case of Scrivens, the court would not find it appropriate to penalize a *pro se* litigant for a delay of about five months in what amounts to a six-year-old case. Perhaps in recognition of the foregoing, Emjack makes no argument that sanctions would serve a deterrent effect. (*See* Mot. at 15-17; Reply ¶¶ 5-18.) Therefore, even if counsel or their respective clients violated Rule 11(b) in some respect, the court would decline to impose sanctions.

Emjack's request for Rule 11 sanctions is denied.

## IV. CONCLUSION

For the foregoing reasons, Emjack and Kiszko's motion for summary judgment is GRANTED, and their request for Rule 11 sanctions against Scrivens and Bregman is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
July 14, 2025

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

16